Kenneth Dale HAMM *v.* STATE of Arkansas

CR 88-35                                          757 S.W.2d 932

Supreme Court of Arkansas
Opinion delivered October 3, 1988

*Shermer & Walker*, by: *M. Susan Walker*, for appellant.

*Steve Clark*, Att'y Gen., by: *Theodore Holder*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. The appellant was convicted of aggravated robbery. We reverse and remand for a new trial.

The appellant made a confession which was recorded on a microcassette and then transcribed by a police secretary. The confession was erased when the tape was reused. Consequently, the State was unable to provide the appellant with the recording of the confession for the purpose of comparing the recording with the transcript. The appellant moved to suppress the statement and expressly cited A.R.Cr.P. Rule 17.1(a)(ii) and *Williamson v. State*, 263 Ark. 401, 565 S.W.2d 415 (1978). The trial court denied the motion and allowed the transcript of the confession to be read into evidence. This ruling was in error.

A.R.Cr.P. Rule 17.1(a)(ii) provides that the prosecuting attorney shall disclose to defense counsel "any . . . recorded statements . . . made by the defendant. . . ." In interpreting this rule, as it concerned witnesses' statements, we said:

> We are persuaded that Rule 17.1 imposed a duty upon the state to disclose to defense counsel, upon a timely request, all material and information to which a party is entitled in sufficient time to permit his counsel to make beneficial use thereof.
>
> . . .
>
> We are further persuaded that appellant was not only entitled to the written transcription prepared by the state from the recorded statements, but appellant was entitled to discover the tapes not only because the tapes represented

the best evidence, but without the tapes, appellant had no way of comparing the transcription in order to determine if the transcription was a correct reproduction of the recordings. Indeed, the statement as well as the tapes would have been most helpful to appellant in his cross-examination of state's witnesses.

*Williamson* v. *State*, 263 Ark. 410, 565 S.W.2d 415 (1978).

Subsequently, we applied the rule to a defendant's statement, as well as to witnesses' statements, and wrote:

Arkansas R. Crim. P. 17.1 provides that the prosecutor shall disclose any written or recorded statement and the substance of any oral statement made by the defendant. In *Williamson* v. *State*, 263 Ark. 401, 565 S.W.2d 415 (1978), we held a defendant is entitled to the tape from which a written statement was transcribed. We pointed out that the tape represents the best evidence and without it the defendant has no way of determining if the transcript was a correct reproduction of the recording.

The state's argument is that the *Williamson* case is distinguishable because in this case the tape is not available, and there it was available, but simply not supplied. Such a distinction should not have the effect the state would have us ascribe to it, for that would deprive the *Williamson* case of its meaning. The authorities could, with impunity, simply destroy the best evidence of what was said by the accused, and then assert its unavailability in every case.

*Mitchell* v. *State*, 295 Ark. 341, 750 S.W.2d 936 (1988).

The State admits that the trial court's ruling on this point was erroneous, but contends that we should still affirm the conviction because (1) the evidence of guilt was overwhelming, and (2) the error was harmless. We reject both contentions.

Excluding the transcription of the appellant's confession, there was no overwhelming evidence of guilt. The victim testified that the robber held a small caliber pistol on him; he said it was probably a .32, but that it may have been a .22 caliber pistol. The police found a .22 caliber pistol in appellant's attic,

and appellant told the police that the pistol in the attic was his. Some unnamed person told the police that a car similar to the defendant's car had been used in the robbery and that there were two white males in it at the time. During the trial the victim testified that the robber was not in the courtroom. Such proof does not constitute overwhelming evidence of guilt.

■ Similarly, the State's harmless error rebuttal must fail. In *Berna v. State*, 282 Ark. 563, 670 S.W.2d 434 (1984), we adopted the position that we would not reverse a case for errors that were not shown to be prejudicial. The State now argues that the appellant has not shown prejudice as a result of the trial court's error in admitting the transcribed statement. The prejudice lies in the fact that the recording was the best evidence, and that without it, the defendant had no way of determining if the transcription was an accurate reproduction of his recorded statement. It was established that the transcription was not perfect, although the errors that were pointed out were admittedly only typographical. In any event, we do not require an appellant to show prejudice when it would be impossible as a practical matter for him to do so. Common sense dictates that appellant could not recall every detail of a statement taken over a two-hour period, which covers more than seven pages in the transcript. This is especially true in light of the stress an accused is under when he makes a statement. Our finding is buttressed by the testimony of Detective Hunt, who, although under very little stress by comparison, talked to the appellant for two hours just before the recording was made, and then at trial testified that he could not remember what they talked about. To require the appellant to remember and point out every discrepancy between the transcription and his recorded statement in order to show prejudice would place an unfair and onerous burden on him.

■ In summation, the trial court erred in allowing the transcription of the appellant's confession to be read into evidence. This does not mean, however, that upon retrial the trial court cannot allow oral testimony about the confession into evidence. It is the transcription itself which was admitted in violation of the rules of criminal procedure.

■■ Appellant next asks that we reverse and dismiss, rather than reverse and remand, because he was charged by

information rather than indictment. In many cases, including most recently *Caldwell* v. *State*, 295 Ark. 149, 747 S.W.2d 99 (1988), we have upheld charges by information against challenges based on the Fifth and Fourteenth Amendments to the Constitution of the United States. Appellant is aware of our cases and asks us to overrule them. We decline to do so. In *Mannix* v. *State*, 273 Ark. 492, 621 S.W.2d 222 (1981), we stated that a prior decision will be upheld unless an injustice will result. We do not find any injustice in the case at bar. Accordingly, we decline to overrule our cases, and refuse to dismiss this case.

The appellant's brief contains two other assignments of error. We discuss them because they are likely to arise again upon retrial. Appellant argues that the consent to search his house, which the police obtained from his wife, was defective because (1) she did not have authority to consent, (2) she was coerced into giving consent, and (3) the written consent was not dated.

A consent to search creates an exception to the search warrant requirement. A.R.Cr.P. Rule 11; *Scroggins* v. *State*, 268 Ark. 261, 595 S.W.2d 219 (1980). A consent justifying a search of premises can only be given by a person who, by ownership or otherwise, is apparently entitled to give or withhold consent. A.R.Cr.P. Rule 11.2. Here, the trial court was not clearly erroneous in finding that the police reasonably believed that appellant's wife had authority to consent to the search of the premises. The police knew that the utilities were registered in her name; they knew she and her daughter were there; they knew the wife and daughter's clothes were there; and finally, she told the officers she lived there.

Appellant next contends that his wife's consent was coerced. Again, we cannot say the trial court's ruling was clearly erroneous. The appellant's wife testified to coercion on the part of the officers. The officers did not recall any statement or action which was coercive. Faced with two versions of the circumstances surrounding the giving of consent, the trial court simply made a credibility determination as to which witness to believe.

The appellant next argues that the consent was invalid in its form because it was only dated with the year, not with the day and month. The argument is without merit. The consent form was positively identified as the one which was executed at the

scene on the day of the search. It is immaterial whether the form was dated.

The next assignment of error, which will arise again upon retrial, involves appellant's assertion that his confession was involuntary because it was given in response to threats and false promises. We can quickly dispose of the argument with regard to the alleged threat. The appellant said he was threatened; the police said he was not. The credibility issue was for the trial court, and we cannot say its ruling was clearly erroneous.

The claim of involuntariness as the result of a promise made by the police is a much closer issue. A statement induced by a false promise of reward is not a voluntary statement. *Davis* v. *State*, 275 Ark. 264, 630 S.W.2d 1 (1982). Some police statements are so clearly false promises of rewards that we do not find it necessary to look beyond the statement and the police action to decide that the confession was involuntary. Examples of such statements are found in *Freeman* v. *State*, 258 Ark. 617, 527 S.W.2d 909 (1975), in which the prosecutor told a defendant, who later received a life sentence, that a confession "would not result in more than 21 years incarceration," and in *Teas* v. *State*, 266 Ark. 572, 587 S.W.2d 28 (1979), in which the defendant received the maximum sentence after being promised a recommendation of leniency and perhaps even dismissal of the charge. Such false promises of rewards constitute prosecutorial misconduct, and the confessions induced by them are to be automatically excluded.

In other cases the police statement and the later action does not provide sufficient information to decide whether it constitutes a false promise of reward. In such cases it is the vulnerability of the defendant, as determined by the totality of the circumstances, which determines whether a false promise of reward was made. This is why "it would probably help if you go ahead and tell the truth," *Harvey* v. *State*, 272 Ark. 19, 611 S.W.2d 762 (1981), and "things would go easier if you told the truth," *Wright* v. *State*, 267 Ark. 264, 590 S.W.2d 15 (1979), were not false promises of reward, while "I'll help you any way I can," *Tatum* v. *State*, 266 Ark. 506, 585 S.W.2d 975 (1979), and "I'll help all that I can," *Shelton* v. *State*, 251 Ark. 890, 475 S.W.2d 538 (1972), were false promises.

The promise made in this case was that the officer would do all that he could for the appellant. The trial judge could not determine from this statement and the officer's actions whether it constituted a false promise which resulted in an involuntary confession. Thus, the trial judge had to take into account and determine whether the appellant was vulnerable to such a police statement. Factors to be considered in determining vulnerability include the age of the accused, his education, his intelligence, how long it took to get the statement, his experience, if any, in criminal law, and the delay between the *Miranda* warning and the confession. *Free* v. *State*, 293 Ark. 65, 732 S.W.2d 452 (1987). Here, all of these factors were not developed, but upon retrial, they should be. The trial court could then make a better determination on the issue of the defendant's vulnerability to the officer's statement. That determination must be made with full awareness that the custodial confession is presumed to be involuntary, and the burden is upon the State to show that it was voluntarily and intelligently made. *Jackson* v. *State*, 284 Ark. 478, 683 S.W.2d 606 (1985).

Reversed and remanded.

HICKMAN, HAYS, and GLAZE, JJ., dissent.

STEELE HAYS, Justice, dissenting. I disagree that either *Williams* v. *State*, 263 Ark. 401, 565 S.W.2d 415 (1978), or A.R.Cr.P. Rule 17.1(a)(ii), require a reversal of this case.

Appellant was arrested on the morning of August 22, 1986, for the aggravated robbery of W.L. Ferguson, which occurred at 11:45 a.m. the previous day. At police headquarters appellant was given the Miranda warnings and signed the appropriate forms indicating that he understood his rights and chose to waive them. He agreed to give a statement to be recorded on a cassette tape, provided his wife and daughter were present. That was agreed to and appellant gave a recorded statement to Detective David Hunt in the presence of his wife and daughter.

Appellant's statement consists of eight pages in question and answer form in which he stated that he and Ray Graves drove down Tyler Road in Russellville, that Ray got out of the car and appellant drove down and stopped in front of the Dairy Queen on Hwy. 64. When Ray came running back to the road appellant

picked him up, drove him to the Confederate Inn at Morrilton and came home. He said Ray had a .22 pistol which appellant hid in his attic and got $1,000 in the robbery, that Ray gave him $400 which he flushed down the toilet when the police arrived at his house the next morning. He said they had decided to rob "Cowboy" Ferguson because appellant's brother, Ricky Hamm, told them Ferguson had a lot of money and was old.

Prior to trial appellant filed a request for discovery, asking for "*a copy* of any written or recorded statements, or the substance of any oral statements, made by the accused." (Emphasis supplied). The state responded by furnishing a typed, verbatim copy of appellant's statement.

Appellant moved to suppress appellant's confession as being coerced and because the original tape recording was not available. At the suppression hearing Detective Hunt testified that after the tape recording was transcribed by a secretary, he listened to it and determined that the typed transcription was accurate and for budgetary reasons the original tape was not preserved. The court denied the motion to suppress and appellant's statement was admitted at trial.

I do not find a breach of A.R.Cr.P. Rule 17.1(a)(ii) in this instance. Appellant asked for a *copy* of a defendant's statements and makes no contention that he did not receive just that. Moreover, Detective Hunt, whom appellant's counsel characterized (in oral argument) as "a very honest officer" testified that the copy was an accurate, verbatim transcription of the tape and appellant makes no claim to the contrary. The only inaccuracy the appellant could point to in the suppression hearing was that Detective Hunt spoke of the robbery as occurring at 11:45 *p.*m., rather than 11:45 *a.*m. on August 21. Whether this discrepancy was his mistake or a typographical error was not resolved, but it is undisputed that the robbery occurred in the morning and the state never claimed otherwise.

Nor does *Williamson* v. *State, supra,* govern this case. In *Williamson,* the prosecutor furnished a typed copy of a tape recorded statement of a witness to the defense, but refused to permit the defense to have access to the original tape even though he still had it in his possession. We held that it was error for the trial court to refuse to order the state to permit the defendant to

have access to the original tape.

In contrast, the tape no longer exists in this case and there is no contention that its absence is due to bad faith. Nor is this the statement of a third party, it is the statement of the defendant himself which he does not deny having given. Neither the appellant nor his wife testified to any inaccuracies between the taped statement and the typed copy and in the absence of any contention that the copy is materially flawed, the trial court's ruling of admissibility ought not to be reversed. A.R.E. 1003 provides that a duplicate is admissible to the same extent as an original unless a genuine question is raised as to the authenticity of the original. Appellant not only made no showing of a lack of authenticity, he does not even allege it. I would affirm the trial court.

HICKMAN, J., and GLAZE, J., join this dissent.